## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CRYSTAL CLEAR POOLS, INC. /d/b/a CRYSTAL CLEAR POOLS AND SPAS, on behalf of itself and all others similarly situated, | CIVIL ACTION  NO.  2:12-cv-00506 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| POOL CORPORATION, SCP DISTRIBUTORS LLC, and SUPERIOR POOL PRODUCTS LLC, | |
| Defendants. | |

Plaintiff Crystal Clear Pools, Inc., d/b/a Crystal Clear Pools and Spas, on behalf of itself and all others similarly situated, alleges the following against Pool Corporation, SCP Distributors LLC, and Superior Pool Products, LLC (collectively "Defendants") based on counsel's investigation, research and review of publicly available documents, on Plaintiff's personal knowledge, and upon information and belief:

<u>**NATURE OF THE CASE**</u>

1.      Pool Corporation, with and through with its wholly owned subsidiaries SCP Distributors LLC, and Superior Pool Products, LLC, dominates Pool Product (defined *infra*) sales in the United States and the Relevant Market (defined *infra*).  Pool Corporation gained its position of dominance through anticompetitive acts, which are unlawful under United States antitrust laws, namely those prohibiting monopolization and attempted monopolization.

2.      As a direct and proximate cause of the anticompetitive acts alleged in this complaint, Defendants prevented competition in the Relevant Market through, *inter alia*,

refusing to deal with manufacturers who deal with their competition and shutting down competition.  Their anticompetitive actions positioned Defendants to raise prices on Pool Products, of which there was no ready substitute in the Relevant Market, and Defendants did so...

3.     The Federal Trade Commission ("FTC") engaged in an investigation of Defendant Pool Corporation's unlawful practices.  That investigation culminated in a consent decree prohibiting Pool Corporation from engaging in certain practices.  This complaint now seeks compensation for those directly victimized by Defendants' unlawful practices.

## JURISDICTION AND VENUE

4.     Plaintiff brings this action pursuant to Sections 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages, injunctive relief, and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.

5.     This Court has jurisdiction pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.

6.     Venue is proper in this District pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c).  Venue is proper in this District because one or more of the Defendants resides, transacts business, is found or has agents in this District, because a part of the events giving rise to Plaintiff's claims occurred in this District and a portion of the affected interstate trade and Defendants carried out the commerce described below in this District.

7.     This Court has personal jurisdiction over each Defendant because, among other things, each Defendant: (a) transacted business throughout the United States, including in this District, and continues to do so; (b) delivered or sold substantial quantities of Pool Products and

2

other products throughout the United States, including in this District, and continues to do so; (c) has and had substantial contacts within the United States, including in this District; and (d) engaged in antitrust conduct that was directed at, and had a direct, foreseeable, and intended effect of causing injury to the business or property of, persons residing in, located in or doing business throughout the United States, including in this District.

## PARTIES

8.      Plaintiff is an Oklahoma corporation with its principal place of business in Shawnee, Oklahoma.  Plaintiff purchased Pool Products directly from one or more of the Defendants at inflated prices during the class period.

9.      Defendant Pool Corporation is a Delaware corporation with its principal place of business in Covington, Louisiana.  According to its 10-K report filed with the Securities and Exchange Commission, Pool Corporation "is the world's largest wholesale distributor of swimming pool supplies, equipment and related leisure products and is one of the top three distributors of irrigation and landscape products in the United States."

10.      Defendant SCP Distributors LLC is a Delaware corporation with its principal place of business in Covington, Louisiana.

11.      Defendant Superior Pool Products LLC is a Delaware corporation with its principal place of business in Covington, Louisiana

12.      Superior Pool Products LLC is a wholly owned subsidiary of SCP Distributors LLC, which in turn, is a wholly owned subsidiary of Pool Corporation.

## RELEVANT MARKET ALLEGATIONS

13.      There are over nine million residential pools in the United States, and over 250,000 commercial pools operated by hotels, country clubs, apartment buildings,

municipalities, and others.  In 2010, the distribution of Pool Products was an estimated $3 billion industry in the United States.

14.     The relevant product market is the wholesale distribution of residential and commercial swimming Pool Products.

15.     The term ö Pool Productsö encompasses any equipment, product, part or material used for the construction, renovation, maintenance, repair or service, of residential or commercial swimming pools (*e.g.*, pumps, filters, heaters, cleaners, covers, drains, fittings, diving boards, steps, rails, pool liners, pool walls, chemicals, and cleaning tools).   This definition does not include pool toys or games; generic building materials (*i.e.*, concrete, salt, sand, rebar, tiles, pavers, and electrical and plumbing products); or any equipment, product, part or material that is used solely for landscaping or irrigation; Olympic-style pools; or pools used in commercial water parks.

16.     Pool Products are designed and manufactured specifically for residential and commercial swimming pools.    There are no close substitutes for pool products, and no other products significantly constrain their pricing.

17.     Pool distributors purchase Pool Products from manufacturers, warehouse them, and then resell those products to pool builders, pool retail stores and pool service and repair companies (collectively, ö pool dealersö or ö dealersö).  Pool dealers then sell the Pool Products to the ultimate consumer: owners of residential and commercial pools.

18.     Pool Product manufacturers consider wholesale distributors to be a unique and essential channel for the efficient distribution of their products.  Distributors purchase and warehouse significant volumes of Pool Products throughout the year, allowing manufacturers to operate their factories year-round notwithstanding the seasonal nature of the pool industry.

Distributors also provide one-stop shopping, timely delivery, and the extension of credit to thousands of dealers, thereby providing dealers and manufacturers with significant transactional efficiencies.  Additionally, distributors often help manufacturers administer their dealer rebate and warranty programs, and provide expertise to answer dealers' product-related questions.

19.     The relevant geographic market in this case is the Pool Product distribution market in the United States, or, in the alternative, in the state of Oklahoma ("Relevant Market").

20.     Pool Corporation has market power in the Relevant Market.

21.     Pool Corporation is the world's largest distributor of Pool Products and operates half of all pool distribution facilities in the United States.  Through a series of acquisitions, Pool Corporation has grown substantially larger than its next nearest comparison.  Pool Corporation operates over two-hundred (200) distribution centers in the United States.  The next largest U.S. distributor operates less than forty (40) distribution centers.  This makes Pool Corporation five-hundred percent (500%) larger than its next nearest competitor.

22.     Pool Corporation has even greater monopoly power in numerous local geographic markets, including:

        a.   Alabama;

        b.   California;

        c.   Louisiana;

        d.   Missouri;

        e.   Oklahoma;

        f.   Tennessee; and,

        g.   Texas.

23.     In the aforementioned local geographic markets, Pool Corporation is either the only distributor or most dominant distributor in the market, and has maintained a market share of approximately eighty percent (80%) or higher for at least the past five (5) years.  Exacerbating Pool Corporation's dominance in these markets, Pool Corporation is the largest nationwide buyer of Pool Products, often representing thirty (30%) to fifty percent (50%) of a manufacturer's total sales.  This volume allows Pool Corporation to qualify for large volume discounts not available to other distributors.

24.     Through the anticompetitive conduct alleged in this complaint, Pool Corporation and the other Defendants foreclosed new entrants from obtaining Pool Products directly from manufacturers and created insurmountable barriers to entry in the Relevant Market.

**INTERSTATE TRADE AND COMMERCE**

25.     The activities of Defendants, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.  During the class period, defined *infra*, Defendants produced, delivered and sold substantial quantities of Pool Products in a continuous and uninterrupted flow of interstate commerce, including through and into this District.  The anti-competitive conduct in which the Defendants participated had a direct, substantial and reasonably foreseeable effect on interstate commerce.

**FACTUAL ALLEGATIONS**

**I.     The Wholesale Pool Product Distribution Industry**

26.     The swimming pool industry is a very fragmented one.  Over 100 manufacturers produce a small number of product lines, such as pool heaters, diving boards, or rails.

27.     There are only three manufacturers that sell virtually all the Pool Products necessary to operate and maintain a pool: (1) Pentair Water Pool and Spa, Inc.; (2) Hayward Pool

Products, Inc.; and, (3) Zodiac Pool Systems, Inc (collectively õthe Full-Line Manufacturers.ö) These three manufacturers are considered full-line manufacturers and represent 50% of sales at the wholesale level.

28.     Distributors generally carry all brands of Pool Products across all manufacturers in order to satisfy orders from their dealer customers.  It is necessary to sell the products of at least one of the three full-line manufacturers in order to be able to compete effectively as a distributor.  This makes the products of the Full-Line Manufacturers õmust haveö products for wholesale distributors, not only because of the volume of products they represent, but also because of the considerable consumer demand for the products.  Thus, a positive relationship between the distributor and the Full-Line Manufacturers is critical to the success of the pool distributor.

29.     The distribution chain can be summarized by the following diagram:



30.     Manufacturers are generally willing to sell their products to distributors that: (1) are credit-worthy, (2) maintain a physical warehouse, and (3) have personnel with knowledge of the pool industry.  Manufacturers prefer to have two or more distributors selling their products in a local geographic market to ensure that dealers receive competitive service and prices.

31.     Manufacturers market their products directly to pool dealers in order to create pull-through demand at the distribution level.

32.     In conjunction with advertising to pool dealers, manufacturers offer year-end rebates to distributors based on the volume of the distributor's purchases.  The year-end rebates have a substantial effect on the ultimate price paid by distributors for pool products.  Indeed, the

failure to qualify for a rebate can have a significant detrimental impact on the distributor's ability to compete on price.

33.     Pool dealers select which local distributor to do business with based on the level of service the distributor provides and the distributor's ability to compete on price.

## II.     Exclusionary Practices

34.     On or about August 2002, Pool Corporation acquired Fort Wayne Pools, Inc. ("FWP"), a large regional Pool Product distributor.  FWP had operations in sixteen (16) states and was Pool Corporation's largest and sometimes only competitor in numerous local markets.

35.     After acquiring FWP, Pool Corporation closed FWP's distribution facility in Baton Rouge, LA.  The closure of the distribution facility left Pool Corporation as the only remaining distributor in the area.  Shortly thereafter Pool Corporation implemented a five percent (5%) price increase.

36.     In spring 2003, a former dealer with nearly twenty (20) years of experience in the industry opened a distribution operation in Baton Rouge, LA with the intention of filling the void left by FWP and competing with Pool Corporation ("Louisiana Competitor.")

37.     In response to this competition, Pool Corporation notified all major manufacturers that it would cease dealing with any manufacturer that sold any of its Pool Products to Pool Corporation's new competitor.  Pool Corporation's threat was not just limited to the Baton Rouge area, but applied nationwide.

38.     Such a threat by Pool Corporation carried significant weight, as Pool Corporation was the largest customer of the threatened manufacturers.  No other distributor could replace the volume of lost sales to Pool Corporation.  The loss of sales to Pool Corporation could be

catastrophic to the viability of the major manufacturers.  This was especially true in those markets where Pool Corporation was the only distributor.

39.     Manufacturers could not counter the threats of Pool Corporation by circumventing Pool Corporation's distribution network.  Without expending tens of millions of dollars to enter dozens of markets simultaneously, it would be impossible for the manufacturer to enter dozens of markets simultaneously, more or less offer any economic incentive to other manufacturers that would offset the risks imposed by Pool Corporation's threats.

40.     Because of Pool Corporation's threats, the Full-Line Manufacturers refused to sell Pool Products to the Louisiana Competitor and canceled any pre-existing orders.  Pool Corporation effectively foreclosed the Louisiana Competitor from obtaining Pool Products from manufacturers that represented seventy percent (70%) of all Pool Product sales.  Without direct access to the Full-Line Manufacturer's Pool Products, the Louisiana Competitor's business failed in 2005.

41.     A new entrant to the distribution level of the wholesale Pool Products market cannot avoid the effects of Pool Corporation's conduct by purchasing Pool Products from other distributors, rather than directly from manufacturers.  This is because distributors do not generally sell Pool Products to other distributors.

42.     Moreover, a distributor purchasing from another distributor is not a viable long-term strategy due to increased costs to the purchasing distributor and lower quality service due to the interposition of an intermediary between the distributor and the manufacturer.  For example, manufacturers provide free shipping under manufacturer programs.  When purchasing from another distributor, additional transportation costs apply to the products.  The purchases from the distributor would also be at a marked-up price compared to the manufacturer's price and would

not allow the purchasing distributor to qualify for the manufacturer's year-end rebates like the selling distributor would.  In addition, without full control of its inventory, the purchasing distributor would be hampered from providing timely and quality service to its dealer customers.

43.     Pool Corporation has employed similar exclusionary strategies in other markets, with the purpose and effect of excluding rivals, raising costs to rivals, and maintaining its monopoly power.  These exclusionary strategies have been ongoing since at least 2008.

44.     Pool Corporation's exclusionary practices and policies targeted new entrants because new entrants represented the unique competitive threat of competing aggressively on price to earn new business.  Pool Corporation did not need to target incumbent distributors because there were few, if any, incumbent distributors in the markets at issue.

## III.    Pool Corporation Has Entered Into A Consent Decree

45.     On November 21, 2011, the FTC announced a settlement resolving charges that Pool Corporation engaged in anticompetitive tactics through a consent decree.

46.     The FTC's complaint charged that for the past eight years Pool Corporation used its monopoly power to thwart entry by new competitors by blocking them from buying pool products directly from manufacturers: *In the matter of Pool Corporation*, FTC File No. 101 0115.  Pool Corporation's strategy resulted in increased costs to rivals, increased prices, and a reduction of choices to consumers.

## ANTITRUST INJURY

47.     The unlawful actions alleged herein have had the following effects:

a.  Pool Corporation has captured, maintained, and currently maintains a large percentage of the Relevant Market;

11

  b. Pool Corporation impaired and foreclosed competition from rivals from a substantial share of the Relevant Market;

  c. Pool Corporation has raised barriers of entry for potential rivals; and

  d. Pool Corporation has charged supra-competitive prices for Pool Products.

48. Pool Corporation's acts and practices have had the purpose, tendency, capacity, and effect of impairing the competitive abilities and effectiveness of rivals (including the raising of rivals' costs), and impeding and deterring the entry of rivals to the Relevant Market.

49. Pool Corporation's unlawful conduct has contributed significantly to the creation and maintenance of its monopoly power.

50. Pool Corporation has had an adverse effect on competition and consumers by:

  a. Increasing and maintaining the increases in prices paid for Pool Products at artificially high and inflated levels;

  b. Reducing the output of Pool Products;

  c. Eliminating and reducing price competition for Pool Products;

  d. Deterring and impeding the ability of actual or potential competitors to enter or expand their sales in the Relevant Market; and,

  e. Reducing the number of competing Pool Product distributors.

51. There are no legitimate pro-competitive efficiencies that justify Pool Corporation's conduct or outweigh the substantial anticompetitive effects of the conduct.

52. Had Pool Corporation refrained from its anticompetitive conduct and from foreclosing and reducing effective competition, Pool Corporation would have faced competition and prices would have been lower to the purchasers of Pool Products.  Similarly, with competition on the price of Pool Products, actual or potential competitors would have sold more

Pool Products, gained a larger market share, and achieved economies of scale that would have further lowered the prices of Pool Products in the Relevant Market.

53.    Plaintiff and the Class have paid more for Pool Products than they otherwise would have because of Pool Corporation's anticompetitive conduct.

## DAMAGES

54.    During the class period, Plaintiff and the Class purchased Pool Products directly from Pool Corporation and/or its wholly owned subsidiaries, SCP Distributors LLC and Superior Pool Products LLC, in the Relevant Market.

55.    Plaintiff and the Class paid more for Pool Products than they would have paid under conditions of free and open competition.

56.    As a direct and proximate cause of the unlawful acts alleged herein, Plaintiff and the Class were injured financially and damaged in their business and property, in amounts not presently determined.

57.    The harm to Plaintiff and the class amounts to many millions of dollars.

58.    This is antitrust injury of the type that the federal laws were meant to punish and prevent.

## CLASS ALLEGATIONS

59.    This action has been brought and may properly be maintained pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3).

60.    Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as a member of a class ("Class"), initially defined as follows:

> All persons or entities in the United States that purchased Pool Products directly from any Defendant at any time between January 1, 2003 and the date the class is certified.  Excluded from the Class are Defendants and their subsidiaries, parents,

or affiliates, whether or not named as a Defendant in this Complaint, and government entities.

61.     In the alternative, the Class is defined as follows:

All persons or entities in Oklahoma that purchased Pool Products directly from any Defendant at any time between January 1, 2003 and the date the class is certified. Excluded from the Class are Defendants and their subsidiaries, parents, or affiliates, whether or not named as a Defendant in this Complaint, and government entities.

62.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)):  The members of the Class are so numerous and widely dispersed that joinder of them in one action is impractical.  On information and belief, thousands of Class members have purchased Pool Products from Defendants.

63.     **Existence and Predominance of Common Questions of Law and Fact** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)):  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.  whether the United States or Oklahoma constitutes a relevant market;

b.  whether Pool Corporation possesses monopoly power in the Relevant Market;

c.  whether Pool Corporation willfully acquired, maintained, and/or enhanced its monopoly power in the Relevant Market through the allegations contained in this complaint;

d.  whether  Pool Corporation attempted to acquire, maintain, and/or enhance its monopoly power in the Relevant Market through the allegations contained in this complaint;

e.  whether Pool Corporation monopolized the Relevant Market through the unlawful exclusionary conduct alleged in this complaint in order to maintain or enhance its monopoly power in the Relevant Market;

14

      f.   whether Pool Corporation caused Plaintiff and the Class to pay supra-competitive prices for Pool Products, resulting in antitrust injury;  and

      g.   whether Plaintiff and the Class are entitled to damages and, if so, in what amount.

64.     **Typicality** (Fed. R. Civ. P. 23(a)(3)):  Plaintiff's claims are typical of the Class it represents as Plaintiff was charged artificially high prices for Pool Products because of Defendants' conduct.

65.     **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)):  Plaintiff is an adequate representative of the Class because its interest does not conflict with the interest of Class it seeks to represent.  Plaintiff has retained counsel competent and experienced in class action litigation who intends to vigorously prosecute this action.  The interests of Class members will be fairly and adequately protected by Plaintiff and its counsel.

66.     **Superiority and Predominance** (Fed. R. Civ. P. 23 (b)(3))—A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the Class members is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein.  There will be no difficulty in the management of this action as a class action.

## FRAUDLENT CONCEALMENT

67.     Plaintiff and the Class did not discover, nor could they discover through the exercise of reasonable diligence, the existence of the unlawful, anticompetitive conduct, and exclusionary tactics alleged in this complaint until November 2011 when the FTC investigation and consent decree were first made public.

68.     As Pool Corporation's unlawful agreements, understandings, and actions were not public information until the announcement of the FTC's investigation, Plaintiff and the Class were unaware of Pool Corporation's unlawful conduct and were not aware they were paying supra-competitive prices for Pool Products throughout the Relevant Market during the class period.

69.     The affirmative actions of Pool Corporation alleged in this complaint, including the unlawful anticompetitive conduct, were wrongfully concealed, carried out, and implemented in a secretive fashion that did not allow their detection by Plaintiff and the Class.

70.     Pool Products are not exempt from antitrust regulation.  Before announcement of the FTC's investigation and consent decree, Plaintiff and the Class had a reasonable basis for believing the Relevant Market to be competitive.  A reasonable person under the circumstances would not have been put on notice to investigate the lawfulness or illegitimacy of Pool Corporation's Pool Product prices before the announcement of the FTC's investigation and consent decree.

71.     Plaintiff and the Class would not have discovered the alleged monopolization or attempted monopolization at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques used by Pool Corporation to avoid the public disclosure of its anticompetitive conduct and exclusionary tactics.

72.     Because Pool Corporation affirmatively concealed their anticompetitive conduct and exclusionary tactics, Plaintiff and the Class lacked knowledge of the facts or information that would have caused a reasonably diligent person to investigate Pool Corporation's unlawful, anticompetitive conduct, and exclusionary tactics until the FTC announced its investigation and consent decree.

73.     Because of Pool Corporation's fraudulent concealment, the running of any statute of limitations has been tolled with respect to all claims that Plaintiff and the members of the Class allege in this complaint.

## FIRST CAUSE OF ACTION
### Monopolization in Violation of Sherman Act, 15 U.S.C. § 2
### (on behalf of Plaintiff and the Class)

74.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75.     Pool Corporation willfully acquired, maintained and unlawfully exercised monopoly power in the Relevant Market through the exclusionary and anticompetitive conduct set forth in the preceding paragraphs, including but not limited to:

     a.   Entering exclusive dealing arrangements with manufacturers of Pool Products;

     b.   Adopting and announcing a policy of refusing to deal with manufacturers that sold Pool Products to competing distributors;

     c.   Threatening to refuse to deal with manufacturers that sold Pool Products to other distributors; and,

     d.   Engaging in a strategy of acquiring competing Pool Product distributors.

76.     Pool Corporation effectively excluded competition from a significant portion of the Relevant Market, unlawfully acquired and expanded its dominant market share in the Relevant Market, and profited from its anticompetitive conduct by maintaining prices at artificially high levels, and by otherwise collecting the benefits of its illegally obtained and maintained monopoly power.

77.     There is no legitimate business justification for Pool Corporation's anticompetitive actions and the manner in which it acquired and maintained its monopoly in the

Relevant Market.  The anticompetitive effects of Pool Corporation's conducts outweigh any pro-competitive benefits or justifications.  Even if such justifications existed, the pro-competitive benefits could have been obtained by less restrictive means.

78.     As a direct and proximate cause of Pool Corporation's anticompetitive conduct, Plaintiff and the Class were injured in their business or property by Pool Corporation's unlawful monopolization of the Relevant Market.  Plaintiff and other members of the Class paid artificially high and supra-competitive prices for Pool Products for Pool Products in excess of what they would have been absent Pool Corporation's unlawful monopolization of the Relevant Market.

**SECOND CAUSE OF ACTION**
**Attempted Monopolization in Violation of Sherman Act, 15 U.S.C. § 2**
**(on behalf of Plaintiff and the Class)**

79.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80.     Pool Corporation unlawfully attempted to acquire monopoly power in the Relevant Market during the class period, with the intention of doing so, through the exclusionary anticompetitive conduct forth in the preceding paragraphs, including but not limited to:

a.     Entering exclusive dealing arrangements with manufacturers of Pool Products;

b.     Adopting and announcing a policy of refusing to deal with manufacturers that sold Pool Products to competing distributors;

c.     Threatening to refuse to deal with manufacturers that sold Pool Products to other distributors; and,

d.     Engaging in a strategy of acquiring competing Pool Product distributors.

81.     To the extent Pool Corporation has not already acquired and maintained monopoly power in the Relevant Market during the class period, the conduct set forth in the preceding paragraphs resulted in a dangerous probability it would acquire and maintain such monopoly power.

82.     Pool Corporation excluded actual and potential competition in the Relevant Market, and by limiting the market shares of its rivals in an unlawful manner, financially benefited in its attempt to acquire monopoly power.

83.     There is no legitimate business justification for Pool Corporation's anticompetitive actions and the manner in which it acquired and maintained its monopoly in the Relevant Market.  The anticompetitive effects of Pool Corporation's conducts outweighs any pro-competitive benefits or justifications.  Even if such justifications existed, the pro-competitive benefits could have been obtained by less restrictive means.

84.     As a direct and proximate cause of Pool Corporation's anticompetitive conduct, Plaintiff and the Class were injured in their business or property by Pool Corporation's unlawful monopolization of the Relevant Market.  Plaintiff and other members of the Class paid artificially high and supra-competitive prices for Pool Products for Pool Products in excess of what they would have been absent Pool Corporation's unlawful monopolization of the Relevant Market.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows:

A.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      That the conduct of Defendants be adjudged to have been in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

C.      That judgment be entered for Plaintiff and the Class against Defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D.      That Defendants, their affiliates, successors, transferees, assignees and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, continuing to engage in the anticompetitive conduct described herein;

E.      That Plaintiff and members of the Class have such other, further and different relief as the case may require and Court may deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this complaint so triable.

Dated:   February 24, 2012          Respectfully submitted,

                                    /s/ Camilo K. Salas III
                                    Camilo K. Salas III (LA Bar Number 11657)
                                    SALAS & Co., L.C.
                                    650 Poydras Street
                                    Suite 2000
                                    New Orleans, LA 70130
                                    Telephone:  504-799-3080
                                    Direct Line: 504-799-3081
                                    Facsimile:  504-799-3085
                                    E-Mail:  csalas@salaslaw.com

Douglas G. Thompson
Michael G. McLellan
Eugene J. Benick
**FINKELSTEIN THOMPSON LLP**
1077 30th St NW
Suite 150
Washington, D.C. 20007
Tel. (202) 337-8000
Fax. (202) 337-8090
dthompson@finkelsteinthompson.com
mmclellan@finkelsteinthompson.com
ebenick@finkelsteinthompson.com

James D. Sill
Matthew J. Sill
**SILL LAW GROUP**
14005 N. Eastern Ave.
Edmond, OK 73013
Tel: (405) 509-6300
Fax: (405) 509-6268
matt@sill-law.com
jim@sill-law.com

*Attorneys for Plaintiff and the Proposed Class*